IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

DARRON MCGEE,                )
                             )
        Plaintiff,           )
                             )
    v.                       )          CIVIL ACTION NO.
                             )          1:04cv446
LUMBER GROUP, INC. &         )
CHARLES HARRIS,              )
                             )
        Defendants.          )

RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the court on defendants' Motion for Summary Judgment (Doc.

20) filed on February 10, 2005.

Plaintiff Darron McGee is an African American who filed this lawsuit claiming that

defendants Lumber Group, Incorporated ("Lumber Group") and McGee's former supervisor

Charles Harris violated McGee's rights under 42 U.S.C. § 1981 ("section 1981").  McGee

also claims that the defendants subjected him to a hostile work environment based on his

race.  McGee seeks compensatory and punitive damages, as well as attorneys' fees and costs.

This court's jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(4)

(civil rights).

For the reasons set out below, defendants' Motion for Summary Judgment is due to

be granted.

I. SUMMARY JUDGMENT STANDARD

1

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-4.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

2

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.

## II. FACTUAL BACKGROUND

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

McGee is an African American man who worked for Lumber Group for seventeen years.  Lumber Group has three divisions, a Wholesale Wood Division, a Custom Lumber Group, and a retail group called Cole Hall Lumber.

McGee began as a laborer working for the Wholesale Wood in 1985.  Lumber Group promoted him several times, and eventually, he became the manager of shipping and receiving at Wholesale Wood, reporting to Charles Harris and Jim Stuckey.  Harris used profane language to criticize McGee's job performance about once per month.  In 2002, Harris fired McGee after two trucks carrying loads from McGee's division were switched, causing a load headed for Georgia to be delivered to Florida, and the Florida load to be delivered to Georgia.

## III. DISCUSSION

McGee brings claims for disparate treatment and racially discriminatory hostile work environment under section 1981 against Lumber Group and Harris.

## A. DISPARATE TREATMENT

A claimant alleging a deprivation of one or more of the rights enumerated under

section 1981 must show that the defendants intended to discriminate on the basis of a protected characteristic.  Gen. Bldg. Contractors Ass'n v. Pa., 458 U.S. 375, 391 (1982). "The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases."  Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999); see also Turnes v. AmSouth Bank, N.A., 36 F.2d 1057, 1060 (11th Cir. 1994).  Intentional discrimination may be proved through either direct or circumstantial evidence.  EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000).

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption."  Carter v. City of Miami, 870 F.2d 578, 581-2 (11th Cir. 1989).  "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision."  Trotter v. Bd. of Trustees of Univ. of Ala., 91 F.3d 1449, 1454-55 (11th Cir. 1996).  "Therefore, remarks by non-decisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Under this standard, "[i]f an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence."  Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  McGee has not presented any direct evidence that Harris intended to discriminate against McGee on the basis of his race when Harris fired McGee.  Neither McGee nor any of his witnesses has ever heard Harris utter a racially derogatory comment during the seventeen years that McGee worked for Lumber Group.  Dunlap Dep., 37; Darron McGee Dep., 51-2, 65.

4

In order to analyze whether McGee has presented sufficient circumstantial evidence for his claim of disparate treatment to survive summary judgment, the court uses the three-pronged analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and refined in Texas v. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("Burdine").  First, the plaintiff has the burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S.  at 802. Next, if the plaintiff successfully establishes a prima facie case of discrimination, the defendant has the burden of production to articulate a legitimate, nondiscriminatory reason for its action.  Burdine, 450 U.S. at 254.  Third, if the defendant satisfies this burden, the plaintiff must demonstrate that the proffered reason is not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. at 256; Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.  "A plaintiff's prima facie case, combined with sufficient evidence to find that the employers asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

A plaintiff establishes a prima facie case of unlawful disparate treatment using circumstantial evidence by showing  that "he (1) is a member of a group protected by section

5

1981; (2) was qualified for the position; (3) suffered an adverse effect on his employment; and (4) suffered from differential application of work or disciplinary rules." Spivey v. Beverly Enterprises, 196 F.3d 1309, 1312 (11th Cir. 1999).

Here, McGee argues that Harris fired him because he was an African American man, and Harris replaced McGee with a white man. McGee Dep., 58-9. This information is sufficient to establish a prima facie case of discrimination by a preponderance of the evidence under the McDonnell Douglas and Burdine standard.

Once a plaintiff puts forth a prima facie case, this establishes a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employee's termination. McDonnell Douglas, 411 U.S. at 802. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 254-5). "It is important to bear in mind . . . that the defendant's burden of rebuttal is exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (citing Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). Even a mistaken belief on the part of an employer acting in good faith is enough for an employer to meet the burden of persuasion. Walker v. NationsBank of Fla., 3 F.3f 1548, 1564 (11h Cir. 1995).

6

The court finds that the Lumber Group has met its "exceedingly light" burden of production by providing evidence that the Lumber Group fired McGee based on perceived deficiencies in his work performance. See Cooper, 390 F.3d at 725 (citations and quotations omitted). Specifically, the company avers that it fired McGee because of errors in his department, and that McGee had been counseled about these errors. Charles Harris Aff., 1. The problems included inventory shortages, routing errors, and complaints from truckers who worked with McGee. Id. The company also provides evidence that McGee made personal phone calls during work hours, and left on at least one occasion without "clocking out." Id. Also, during McGee's time as supervisor, two truckloads of goods from his department were misrouted, causing a Florida load to go to Georgia and a Georgia load to Florida. Id.

Because the Lumber Group articulated a non-discriminatory reason for McGee's termination, the burden shifts back to McGee "to prove by a preponderance of the evidence that the defendant's reason is but a pretext for discrimination." See Smith v. Horner, 839 F.2d 1530, 1538 (11th Cir. 1988) (citing McDonnell Douglas, 411 U.S. at 804). A plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256; Combs, 106 F.3d at 1528. When an employer has terminated an employee for misconduct, the employee may show that the employer's proffered reason is pretextual if he sets forth evidence that other employees who were not in the plaintiff's protected class engaged in similar behavior but were not terminated, or that the employer knew that its proffered reason was false at the time it fired

7

the employee.  <u>Anderson v. Savage Labs, Inc.</u>, 675 F.2d 1221, 1224 (11th Cir. 1982); <u>Walker</u>, 53, F.3d at 1564 n. 7.

McGee does not refute the Lumber Group's reasons for his termination.  In fact, McGee admits that the events cited by the Lumber Group actually occurred.  McGee admits that he made personal calls and violated company policy by leaving without "clocking out." McGee Dep. 42-3.  He also admits that the trucking mix-up occurred during his time as supervisor responsible for shipping and receiving, indicating that a truck driver switched a load during McGee's watch as supervisor.  <u>Id.</u> at 85-6. McGee simply notes that Lumber Group did not keep disciplinary records or possess any documentation that linked him to the truck mix-up.  Pl. Answer  To Defs. Mot. for Summ. J., 1,2.  He does not, however, claim that the events are untrue or that the company did not think he was responsible.  The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991).  Therefore, McGee fails to provide any evidence that could allow the trier of fact to reasonably infer that the proffered non-discriminatory reasons were either post hoc fabrications or otherwise did not actually motivate the employment action.  <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

McGee's evidence that Harris cursed at him when discussing his work performance at times other than at McGee's termination is insufficient to establish a claim of disparate treatment.  McGee Dep., 49-50, 52.  McGee's witness, co-worker Gerald Dunlap, testified

that while Harris cursed generally and cursed at McGee in particular, Dunlap never saw Harris curse at any white people.  Dunlap Dep., 37.  McGee does not offer evidence as to how Harris counseled others on their performance.  Harris' profanity did not involve racially derogatory terms, and McGee's own witness indicated that he "can't really say it was racially motivated."  Dunlap Dep., 37, 39; see also McGee Dep., 65.  Harris's language, while impolite, was devoid of racially discriminatory content or connotation and cannot be considered evidence of racial discrimination. Cf. Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668 (7th Cir. 1993) (use of terms such as knobhead, knucklehead, and goons had insufficient connection to race to support a claim of hostile work environment).  While words that do not reference race directly can sometimes be sufficient to establish racial discrimination, they must evidence some connection with race.  See id. at 676 (affirming the district court's finding that "you must think you're back in Arkansas chasing jackrabbits" had sufficient connection to a racial stereotype so as to be racially discriminatory).

The Eleventh Circuit has held that "[w]e are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."  Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1991) (citations omitted).  Considering all the circumstances, McGee fails to provide enough evidence from which a jury "could reasonably infer discrimination if the facts presented remain unrebutted."  Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996)  (citation omitted).  Without evidence of racially discriminatory content, disparate disciplinary treatment, or a connection

with the actual termination event, there is not evidence sufficient for a jury to reasonably infer that Harris's comments evidence discriminatory intent.  In fact, McGee admits that the Lumber Group's proffered reasons for his dismissal are true.  As a result, summary judgment is due to be granted in favor of defendants Lumber Group and Charles Harris on these claims.

## B. HOSTILE WORK ENVIRONMENT

To prove a prima facie case of hostile work environment harassment the plaintiff must show that: "(1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); see also Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998).   If the plaintiff establishes his prima facie case, then his proof is considered to be sufficient to withstand the employer's motion for summary judgment.  See, e.g., Lewis v. Forest Pharm., Inc., 217 F. Supp. 2d 638, 653 (D. Md. 2002).

The Eleventh Circuit has explained that the fourth element is the element that "tests the mettle of . . . most harassment claims."  Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000).   An "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher, 524 U.S. at 788.  Courts are "directed

... to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances.'" Id. at 787 (quoting Harris Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is a physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see also Cartwright v. Tacala, Inc., 2000 WL 33287445, *5 (M.D.Ala. November 1, 2000).

McGee cites a range of behaviors and events that he alleges combined to subject him to a hostile work environment at Lumber Group because he was an African American. While some of the behaviors and events are hardly commendable, the alleged harassment was not "sufficiently severe or pervasive" as a matter of law to allow a jury to find a hostile work environment at the Lumber Group. Each of the harassing events identified by McGee will be examined in turn: Harris's Use of Profanity/Racially Offensive Comments by Salespeople, Lack of Parity in Conditions of Employment, Differential Application of Discipline, Racial Mix of the Workforce, and Office Privileges.

1. Harris's Use of Profanity/Racially Offensive Comments by Salespeople

As discussed above, McGee points out that Harris frequently used profanity when counseling McGee about his performance. McGee Dep., 49-50. Even if Harris's language toward McGee was occasionally coarse, "verbal discipline by a supervisor, completely devoid of any statements which could possible be construed as racially offensive," is not the

type of conduct that is actionable under a hostile work environment claim.  Portera v. State of Ala. Dep't of Fin., 322 F. Supp. 2d 1285, 1291 (M.D. Ala. 2004).

During McGee's seventeen-year tenure at the Lumber Group, he overheard a few racially motivated comments.  According to McGee, salesperson Gary Hart often said, "once black, never go back."  McGee Dep., 65-6.  On two occasions, salesperson Doug Kernard told racial jokes.  McGee Dep. 66-7.  After McGee heard Kernard's jokes, he left that area and went back to his job.  McGee Dep., 68.  McGee indicated that none of these comments affected his ability to do his job.  McGee Dep., 67-8.  The Eleventh Circuit has determined that "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently implicate Title VII."  Harris, 510 U.S. at 22; Cf. Lambert v. Fulton County, Ga., 253 F.3d 588, 591 n. 1 (11th Cir. 2001) (noting hostile work environment when supervisors used repeated racial slurs to subordinates, racial slur was scrawled on breakroom wall, and crew leader kept a notebook of graphic Ku Klux Klan imagery). While the salespeoples' comments were inappropriate, they do not rise to the level required to sustain a claim alleging existence of a hostile work environment, as discussed above.

Since McGee denied ever hearing Harris make any comment that had any sort of derogatory racial connotation, and McGee heard only a few comments over many years from salespeople in another department that were actually racially-related, the court cannot conclude that McGee's work environment at the Lumber Group was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment."  Harris, 510 U.S. at 21.  Dunlap Dep., 37, 38.  Martez Rogers Dep., 20.

    2. Lack of Parity in Conditions of Employment

McGee claims that several white employees earned more than he, but the Lumber Group explains the discrepancies and McGee does not rebut the Lumber Group's reasoning. McGee Dep., 53-57,76.  Stacey Knighton was hired at a higher rate of pay than McGee, but McGee was promoted more quickly and ultimately supervised Knighton.  McGee Dep., 78. Jimmy King managed the Custom Lumber Group.  Andre Dep., 2.  King earned a salary, while McGee was paid hourly.  Andre Dep. 3.  McGee was not aware of King's background or duties; Lumber Group offered evidence that King had more experience, and managed not only shipping and receiving like McGee, but also managed skilled manufacturing.  McGee Dep. 80; Andre Dep. 2-3.  Sam Austin, who managed McGee's department prior to McGee's promotion, earned more money but also had more duties than McGee, including manufacturing and design responsibilities.  Andre Dep., 1-2.

McGee also claims that he did not get additional help when he asked for it.  However, he admits that he had duties such as hiring employees or managing truck drivers "taken from him." McGee Dep. 37.  McGee does not identify the reduction in his responsibilities as receiving assistance, but it is undisputed that it reduced his total number of job duties.

When considered in context, McGee fails to show that these salary and job duty differentials are connected to race, or, if they were, that they were so severe and pervasive as to alter the terms and conditions of his employment.

    3. Differential Application of Discipline

McGee also claims that Jimmy Bowers, a white employee, choked McGee during a work dispute, and that the incident was not investigated despite McGee's request for an investigation.  McGee Dep. 72-3.  McGee, however, does not allege that he was choked because he was black; instead, the fight arose from a business dispute.  Id.  Nor does McGee allege that he was disciplined for similar conduct, while a white employee was not.  He does indicate that he heard that black employees were disciplined for fighting in another division.  McGee Dep. 73, 74.  He does not provide details about whether the incidents were similar, and it is not clear that he has personal knowledge of the incident..  Logically, if he did not know whether whites or blacks were disciplined differently, McGee could note have felt – either subjectively or objectively – that his workplace was racially hostile on this basis.

4. Racial Mix of the Workforce

McGee's witness Dunlap notes that employees in the front office were white, while employees in the "yard" were almost all African American.  Dunlap Dep. 59-60.  However, McGee himself was responsible for hiring most of the yard employees during his tenure and, thus, cannot be heard to complain that his own hiring practices subjected him to unwelcome harassment.  McGee Dep., 88.

5. Office Privileges

McGee cites an occasion when he was forced to return a golf cart so that whites could use it.  McGee Dep., 57.  However, McGee had his own personal golf cart, while employees in the front office, who happened to be white, shared a golf cart.  Id.  McGee was disciplined when he did not return the front office golf cart.  Id.

14

One of McGee's witnesses suggests that blacks were barred from the front office. Dunlap Dep., 16.  In later deposition testimony, another employee indicated that for a time "yard" employees went to the front office to obtain coffee and ask questions to salespeople. Martez Rogers Dep., 28-9.  Eventually, the company placed a coffee machine in the back office where McGee and the other "yard" employees could more easily access it. Id.  Also, the Lumber Group changed a reporting system to require yard employees to report problems through McGee, who was allowed to communicate with the sales people in the front office at all times.  Dunlap Dep. 18-9.

Even assuming that the Lumber Group made these decisions based on race, such conduct does not rise to the severe level required to support a hostile work environment claim, as there is no evidence that any issues regarding coffee, access to the front office, or access to another employee's golf cart impaired McGee's ability to perform his job.

Taking all the circumstances into account, Lumber Group's conduct did not affect a "term or condition" of McGee's employment.  The allegedly hostile acts were generally sporadic, not severe, and many bore no connection to race.  See, e.g., Portera, 322 F. Supp. 2d 1285, 1290 (M.D. Ala. 2004) (four non-severe incidents over a six-month period was not frequent enough to create a hostile-work environment).  Nor does McGee demonstrate that the conduct was physically threatening or humiliating, or that it unreasonably interfered with his work performance.  Taking all the circumstances into consideration, this court finds that McGee failed to establish a prima facie case showing that he endured a racially hostile work environment.

IV. CONCLUSION

For the reasons given above, it is the RECOMMENDATION of the Magistrate Judge that defendants' Motion for Summary Judgment (Doc. 20) be GRANTED.

Additionally, it is ORDERED that:

The parties shall file any objections to this Recommendation on or before **May 9, 2005.**  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 25th day of April, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE